UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RACHEL LANGARA and HANS
LANGARA,
    *Plaintiffs*,

v.

BAYER CORPORATION ET AL.,
    *Defendants.*

No. 3:24-cv-288 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Rachel Langara and Hans Langara ("Plaintiffs") have sued Bayer Corporation, Bayer U.S. LLC, Bayer Healthcare LLC, and Bayer HealthCare Pharmaceuticals Inc. for negligent failure to warn ("Count One"), negligent pharmacovigiliance ("Count Two"), negligent marketing and design ("Count Three"), breach of express warranty ("Count Four"), fraudulent, negligent or innocent misrepresentation ("Count Five"), fraudulent concealment and omission ("Count Six"), and, for Mr. Langara only, loss of consortium ("Count Seven") related to injuries Mrs. Langara allegedly suffered from Defendants' drug product, Magnevist. Notice of Removal, ECF No. 1-1 (Mar. 1, 2024) ("Compl.").

Defendants have filed a motion dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 18 (Apr. 8, 2024).

For the following reasons, the motion to dismiss is **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  **Factual Allegations**

        1.  *Gadolinium and GBCAs*

Plaintiffs allege that "Gadolinium is a very toxic substance and has the potential to be absorbed and deposited in the organs and tissues, where it can be retained for a substantial

period" of time. Compl. ¶ 25. Plaintiffs allege that gadolinium-based contrast agent ("GBCA") products are linked to nephrogrenic systemic fibrosis ("NSF"), "a debilitating condition" that can cause symptoms such as "tightening of the skin; . . . burning, itching and severe pains; . . .; muscle weakness; bone pain; . . ., and in certain cases, severe skin thickening, to the extent that the joints loss flexibility and become locked in place." *Id.* ¶ 31.

In May 2007, the Food and Drug Administration ("FDA") allegedly issued a warning about GBCAs and noted the risk of NSF to patients with chronic kidney disease.

In 2010, the FDA allegedly required GBCA drug labels to advise "healthcare professionals not to use Omniscan™, Magnevist® or Optimark® in patients with chronic kidney disease."

On May 22, 2017, the FDA released a safety announcement allegedly "acknowledging reports of gadolinium retention in the brains of some patients who undergo multiple GBCA contrasts and retain gadolinium long after the administration" as well as reports showing that "linear GBCA's retain more gadolinium in the brain than macrocyclic." *Id.* ¶ 39 (citing https://www.fda.gov/Drugs/DrugSafety/ucm559007.htm).

In December 2017, the FDA allegedly released "a safety announcement requiring a new class warning and other safety measures for all GBCA's" concerning the retention of gadolinium. *Id.* ¶ 40 (citing https://www.fda.gov/Drugs/DrugSafety/ucm589213.htm)

On May 16, 2018, the FDA allegedly approved new Medication Guides for GBCA products. *Id.*

On May 21, 2018, GBCA manufacturers, including Defendants, allegedly "issued a joint warning to patients with normal renal function." *Id.* ¶ 41.

Plaintiffs allege that certain studies indicate that individuals with normal renal function can also develop symptoms of NSF after receiving GBCAs. *Id.* ¶ 35–38.

### 2. *Mrs. Langara's Medical Conditions*

Plaintiffs allege that Defendants' linear GBCA product, Magnevist, exposed Mrs. Langara to harmful levels of gadolinium and triggered significant adverse health conditions.

On December 5, 2008 at 3:00 p.m., Mrs. Langara was allegedly given 9 ml of GBCA Magnevist at a medical center in Norwalk, Connecticut. *Id.* ¶ 81.

Half an hour later at 3:30 p.m. that same day, Mrs. Langara allegedly experienced an adverse reaction to the medication, including "nausea, itching of the hands, shivering, [] redness of her extremities, burning of the chest and throat tightness," and went to the emergency room. *Id.* ¶ 83.

From December 2008 to at least June 2017,[1] Mrs. Langara allegedly experienced continued symptoms, including "a stabbing feeling when swallowing, burning during urination and back pain," "joint pain," "skin discoloration," "generalized weakness," "rectal bleeding and abdominal pain," and "recurrent palpitations, dyspnea and lightheadedness." *Id.* ¶ 84, 86–90.

On January 9, 2009, a physician allegedly diagnosed Mrs. Langara with neuropathy. *Id.* ¶ 86.

On March 11, 2009, Mrs. Langara visited a dermatologist "with signs of skin discoloration." *Id.* ¶ 87. Allegedly "[a] potential diagnosis of [NSF] was discussed but ruled out due to [Mrs. Langara's] normal renal function and lack of skin induration." *Id.*

---

[1] Plaintiffs allege that Mrs. Langara visited either the emergency room or a physician on December 6, 2008, December 10, 2008, January 9, 2009, March 11, 2009, May 18, 2009, March 29, 2010, September 20, 2010, April 18, 2016, February 2, 2017, March 2, 2017, and June 27, 2017. Compl. ¶¶ 84–93.

On May 18, 2009, a different physician allegedly diagnosed Mrs. Langara with steroid myopathy. *Id.* ¶ 88.

On April 18, 2016, Mrs. Langara was also allegedly diagnosed with Postural Tachycardia Syndrome. *Id.* ¶ 90.

On June 27, 2017, a physician allegedly informed Mrs. Langara "that he believed her exposure to gadolinium triggered an allergic reaction, which in turn triggered an autoimmune state" and "that the gadolinium was likely still in her body and likely still invoking the reactions initially caused by Magnevist®." *Id.* ¶ 93.

### B. Procedural History

On June 26, 2020, Plaintiffs filed suit against the Defendants in the Commonwealth of Massachusetts, and Defendants later removed the case to the United States District Court for the District of Massachusetts. Compl. ¶ 20.

On May 11, 2022, the District of Massachusetts dismissed the suit for lack of personal jurisdiction. *Id.* ¶ 21. Plaintiffs subsequently filed an appeal. *Id.* ¶ 22.

On January 31, 2023, the First Circuit affirmed the district court's ruling. *Id.*

On February 9, 2024, Plaintiffs filed their Complaint in Connecticut Superior Court, Judicial District of Stamford/Norwalk. Compl.

On March 1, 2024, Defendants removed the case to federal court. Not. of Removal, ECF No. 1 (Mar. 1, 2024).

On April 8, 2024, the Defendants filed their motion to dismiss the Complaint. Mot. to Dismiss, ECF No. 18 (Apr. 8, 2024); Mem. in Support of Mot. to Dismiss, ECF No. 18-1 (Apr. 8, 2024) ("Mot.") [2].

---

[2] Where the internal pagination of the document conflicts with the ECF-generated pagination, this Order refers to the ECF-generated pagination.

4

Plaintiffs, proceeding *pro se*, did not file an objection to the motion to dismiss.

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for

5

failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III.   DISCUSSION

Defendants argue that Plaintiffs' Complaint must be dismissed because "(1) Plaintiffs' claims are time barred by Connecticut's statutes of limitations and repose; (2) Plaintiffs' claims are preempted by federal law; and (3) Plaintiffs' common-law products-liability claims are displaced by the Connecticut Product Liability Act ("CPLA")." Mot. at 1.

The Court will address each issue in turn.

### A. Statute of Limitations Defense

Under Connecticut law, a tort claim must be "brought but within three years from the date of the act or omission complained of," Conn. Gen. Stat. § 52–577, and a products liability claim must be brought within three years from the date when the injury "is first sustained or discovered or in the exercise of reasonable care should have been discovered." *Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir. 1992) (quoting Conn. Gen. Stat. § 52–577a). "In Connecticut, a cause of action [for a product liability claim] accrues when a plaintiff suffers actionable harm. Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." *Id.* (quoting *Champagne v. Raybestos–Manhattan*, 562 A.2d 1100, 1107 (Conn. 1989)); *see also Catz v. Rubenstein*, 513 A.2d 98, 100–101 (Conn. 1986) ("A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence."). Accrual, however, requires not "the fullest manifestation" of the actionable harm, but merely "some form" of it. *Gnazzo*, 973 F.2d at 138 (quoting *Lambert v. Stovell*, 529 A.2d 710, 713 (Conn. 1987)) (emphasis removed);

"While the question of when a plaintiff discovered or should have discovered the actual harm is normally reserved for the jury, the issue can be resolved as a matter of law when there is evidence of a plaintiff's concrete awareness of a causal connection between the defendant and the injury suffered." *K.E. v. GlaxoSmithKline LLC*, No. 3:14-cv-1294 (VAB), 2017 WL 440242, at *20 (D. Conn. Feb. 1, 2017) (citing *Lagassey v. State*, 846 A.2d 831, 841 (Conn. 2004) ("[A]lthough our cases make clear that the point at which a plaintiff discovered or in the exercise

7

of reasonable care should have discovered an injury is generally a question of fact, that issue has been resolved as a matter of law on some occasions")).

In addition, Section 52-592 of the Connecticut General Statutes provides a savings provision which "allows a plaintiff to re-file a dismissed action, within one year of dismissal, if two requirements are met: (1) the original action must have been 'commenced' within the applicable statute of limitations; and (2) the original action must have failed because of one of the specific procedural reasons enumerated in the statute." *Hodges v. Glenholme Sch.*, 713 F. App'x 49, 52 (2d Cir. Nov. 16, 2017) (summary order); *see also* Conn. Gen. Stat. § 52-592 ("If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits. . . because the action has been dismissed for want of jurisdiction . . . the plaintiff, . . . may commence a new action. . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.").

Defendants argue that, because "Rachel Langara suffered injuries immediately after receiving Magnevist in 2008, was told that Magnevist caused her injuries, and then sought treatment for her injuries multiple times in 2008 and 2009. . . . Plaintiffs' claims accrued by 2009 at the latest," and thus their claims are now time-barred.

In their Complaint, Plaintiffs allege that "it was not until June 27, 2017 that [Mrs. Langara's] doctors told her that the sickness, harm and injury from which she has been suffering for years since her MRI in December 2008 was directly related to her exposure to Magnevist." Compl. ¶ 76, and thus this action is timely because Plaintiffs first filed suit in the District of Massachusetts on June 26, 2020, and brought this action within one year of the First Circuit's dismissal of the case for lack of jurisdiction, *id.* ¶ 23. Plaintiffs further assert that Defendants' "failure to report, document, or follow up on the known adverse event complaints, and

concealment of adverse events, known defects, serious increased risks, dangers, and complications, constitutes fraudulent concealment that equitably tolls any proffered statute of limitation." *Id.* ¶ 43.

Defendants argue that even if Plaintiffs' claims accrued in 2017, their claims would still be time-barred as they filed this suit more than three years after the claim accrued, and because Connecticut's statute of repose places an independent bar on Plaintiffs' claims. Mot. at 10–11.

The Court agrees.

Plaintiffs' allegations in their Complaint are sufficient for the Court to find as a matter of law that Plaintiffs' claims accrued no later than 2009. Plaintiffs allege that Mrs. Langara "was administered Magnevist® at 3:00 p.m. on December 5, 2008 and began reacting to the dye at 3:30 p.m. that same day." Compl. ¶ 83. Plaintiffs allege that, on December 5, 2008, she "was told that she had an allergic reaction to the contrast agent [*i.e.*, Magnevist] that should clear in a few days." *Id.* Mrs. Langara continued to see medical providers for treatment on five times in the next six months, including a visit on May 18, 2009 when "she saw Dr. John O'Brien for complaints of generalized weakness following her allergic reaction during the MRI." *Id.* ¶¶ 84–88. Even construing these facts in the light most favorable to the Plaintiffs, Mrs. Langara "first . . . discovered or in the exercise of reasonable care should have [] discovered" her products liability claim against Defendants based on her adverse reaction to Magnevist in 2009 when she suffered ongoing symptoms for several months that began thirty minutes after the administration of Magnevist and after she was told she suffered an allergic reaction to the product. *Gnazzo*, 973 F.2d at 138 ("Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." (quoting *Champagne*, 562 A.2d at 1107)).

Alternatively, Plaintiffs allege that "Plaintiff's lack of knowledge of the true risks associated with Magnevist® are consistent with the FDA announcement in December 2017 and update in May of 2018," and Mrs. Langara "could not have known that Magnevist® was defective" before then because "this knowledge nor the new patient guidelines were available to [Mrs. Langara] or her healthcare providers." Compl. ¶ 52–53.

As discussed below, however, the FDA guidance cited in Plaintiffs' Complaint expressly disavowed risks for persons with normal renal functioning, such as Mrs. Langara. *See id.* ¶ 39 (citing https://www.fda.gov/Drugs/DrugSafety/ucm589213.HTM ("Gadolinium retention has not been directly linked to adverse health effects in patients with normal kidney function, and we have concluded that the benefit of all approved GBCAs continues to outweigh any potential risks."); *see also id.* ¶ 87 ("A potential diagnosis of [NSF] was discussed but ruled out due to [Mrs. Langara's] normal renal function"). In addition, "the statute [of limitations] begins to run when the plaintiff discovers *some form* of actionable harm, not the fullest manifestation thereof." *Lambert*, 529 A.2d at 713 (emphasis in original); *see also K.E.*, 2017 WL 440242, at *20 ("[W]hen the record indicates that a plaintiff was aware of links between the defendant and the injury she suffered, her cause of action has certainly accrued.") (collecting cases). On this record, Plaintiffs should have known that Mrs. Langara's injuries were caused by the administration of Magnevist when she suffered an adverse reaction minutes after receiving a dose of the medication and continued to suffer significant adverse health effects in the days and months afterwards.

Accordingly, because Plaintiffs' claims accrued in 2009, this action is time barred.[3]

---

[3] Count Seven, which alleges loss of consortium, "is derivative of the injured spouse's cause of action" and is likewise time-barred. *Hopson v. St. Mary's Hospital*, 408 A.2d 260, 264 (Conn. 1979) ("[B]ecause a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits.")

Mindful of Plaintiffs' *pro se* status and the special solicitude afforded to *pro se* litigants, *see Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."), however, the Court will consider whether Plaintiffs' claim would have been timely, if it accrued in 2017.

Section 52-592 expressly states that its savings provision is inapplicable to suits brought outside of Connecticut. Section 52-592(d) clarifies that the savings provision "shall apply . . . to any action between the same parties . . . for the same cause of action or subject of action brought to any court in this state, . . ., and to any action brought to the United States circuit or district court for the district of Connecticut which has been dismissed without trial upon its merits or because of lack of jurisdiction in such court." Conn. Gen. Stat. § 52-592(d). As a result, "[t]he applicability of General Statutes § 52–592, construed according to its plain and ordinary meaning, hinges on the parties bringing the action initially within a state or federal court in [Connecticut]." *Lippmann v. Rashkoff*, 628 A.2d 624, 626 (Conn. App. 1993). As a result, even if Plaintiffs' claim accrued later in 2017, Plaintiffs' claim is still untimely because Plaintiffs' 2017 suit brought in the District of Massachusetts did not toll the statute of limitations for their action.[4]

---

[4] Defendants also argue that Section 52-577a's statute of repose independently bars Plaintiffs' suit. This "statute of repose bars a claim brought 'later than ten years from the date that the party last parted with possession or control of the product.'" *Hubbard-Hall, Inc. v. Monsanto Co.*, 98 F. Supp. 3d 480, 483 (D. Conn. 2015) (citing Conn. Gen.Stat. § 52–577a(a)). Defendants argue that because the dose of Magnevist that Plaintiff received has not been in their possession or control for more than ten years, Plaintiffs' suit is barred under the statute of repose. Mot. at 11. Defendants further argue that exceptions to the statute of repose do not apply. *Id.* For example, "Section 52–577a(c) provides that the statute of repose shall not apply 'provided the claimant can prove that the harm occurred during the useful safe life of the product.'" *Hubbard-Hall*, 98 F. Supp. 3d at 483. Because "[t]he duration of a product's useful safe life is a question of fact," *Hubbard-Hall*, 98 F. Supp. 3d at 483, this issue is ill-suited to consideration on a motion to dismiss. *See A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015) ("Of course, fact-intensive inquiries are ill-suited for resolution at the motion to dismiss stage." (citation and internal quotation marks omitted)). This is particularly true here where Plaintiffs allege that gadolinium contained in Magnevist "can be retained [in the body] for a substantial period," Compl. ¶ 25, although the Court finds it unlikely

While the Court appreciates the serious concerns raised in Plaintiffs' Complaint, and is "mindful that the 'unavoidable result [reached] in this case is harsh, . . . it is within the [Connecticut] General Assembly's constitutional authority to decide when claims for injury are to be brought." *Gnazzo*, 973 F.2d at 139 (quoting *Burns v. Hartford Hospital*, 472 A.2d 1257, 1261 (Conn. 1984)).

Accordingly, "[w]here a plaintiff has failed to comply with this requirement, a court may not entertain the suit," *id.*, and Plaintiff's claims are time-barred.

### B. Federal Preemption of Plaintiffs' Claims

Because the Court has determined that this suit is time-barred, it need not reach Defendants' remaining arguments. But, even if not time-barred, several of Plaintiffs' claims are preempted by federal law. Mot. at 17.

Under the Constitution, Congress has the power to preempt state law, and courts "will find preemption where it is impossible for a private party to comply with both state and federal law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). "The Food, Drug, and Cosmetics Act (FDCA) authorizes the federal government to regulate the manufacture, labeling, and sale of pharmaceuticals." *Ignacuinos v. Boehringer Ingelheim Pharms. Inc*, 8 F.4th 98, 101 (2d Cir. 2021). As a result, "[d]esign and manufacturing defect claims that a drug manufacturer has breached its duties under state law are preempted by federal law if the manufacturer would require prior FDA approval to comply with those duties. Conversely, the same state claims may proceed if the manufacturer could have acted unilaterally without prior FDA approval." *Id.*; *see also Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 475 (2013) (recognizing that "federal law prohibits generic drug manufacturers from independently changing their drugs' labels," and thus

---

that such retention would qualify as the "useful safe life" of Magnevist. See *Hubbard-Hall*, 98 F. Supp. 3d at 485 ("The 'useful safe life' of a product expires when it can no longer be reasonably expected to function as intended.").

12

"state-law design-defect claims that turn on the adequacy of a drug's warnings are pre-empted by federal law.").

For drug design and manufacturing changes, "[t]he relevant FDA regulation, 21 C.F.R. § 314.70, makes clear that a manufacturer must obtain prior FDA approval for any 'major' changes to the design and manufacturing of already-approved drug products, but not for 'moderate' or 'minor' changes." *Ignacuinos*, 8 F.4th at 101 (citing 21 C.F.R. § 314.70(b)–(d)). "Major" changes include "changes in the qualitative or quantitative formulation of the drug product, including inactive ingredients, or in the specifications provided in the approved [FDA drug application]." 21 C.F.R. § 314.70(b)(2)(i).

As for drug labels, the "'changes being effected' (CBE) regulation provides that if a manufacturer is changing a label to 'add or strengthen a contraindication, warning, precaution, or adverse reaction' or to 'add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product,' it may make the labeling change upon filing its supplemental application with the FDA; it need not wait for FDA approval.'" *Wyeth v. Levine*, 555 U.S. 555, 568 (2009) (quoting 21 C.F.R. §§ 314.70(c)(6)(iii)(A), (C)).

"Because manufacturers may unilaterally update a drug's label if the change complies with the CBE regulation, a state law failure-to-warn claim that depends on newly acquired information – information that Defendants could have added to their label without FDA approval – is not preempted*.*" *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019). "Newly acquired information . . . may include (but is not limited to) data derived from new clinical studies, reports of adverse events, or new analyses of previously submitted data (e.g., meta-analyses) if the studies, events, or analyses reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA." 21 C.F.R. § 314.3(b).

13

"[T]o state a claim for failure-to-warn that is not preempted by the FDCA, a plaintiff must plead a labeling deficiency that [Defendants] could have corrected using the CBE regulation. If the plaintiff meets that standard, the burden shifts to the party asserting a preemption defense to demonstrate that there is clear evidence that the FDA would not have approved a change to the [prescription drug's] label." *Gibbons*, 919 F.3d at 708 (internal quotations and citations omitted, alterations in original).

Defendants argue that Plaintiffs' design defect claim, Count Three, is preempted because Defendants "could not have changed Magnevist's formulation given the regulatory bar on a manufacturer's unilateral alteration of a drug's design." Mot. at 18 (citing 21 C.F.R. § 314.70(b)(2)(i)).

Defendants also argue that Plaintiffs claims relating to the adequacy of Defendants' label warnings, are also preempted because several courts have held that drug manufacturers could not have unilaterally changed their labels under the CBE regulation "to include [Plaintiffs'] desired warning that gadolinium retention from GBCAs causes health problems in patients with normal renal function." Mot. at 17 (quoting *McGrath v. Bayer HealthCare Pharm. Inc.*, 393 F. Supp. 3d 161, 164, 171 (E.D.N.Y. 2019)).

The Court agrees.

Plaintiffs claim that Magnevist's design was defective, in part, "because of the potential to cause Gaolinium Toxicity even in a healthy patient with normal renal function." Compl. ¶ 124. "[C]hanges in the qualitative or quantitative formulation" of Magnevist, however, are a major change that Defendants cannot unilaterally adopt. 21 C.F.R. § 314.70(b)(2)(i); *Ignacuinos*, 8 F.4th at 101; *Bartlett*, 570 U.S. at 477 (2013) ("Once a drug—whether generic or brand-name—is approved, the manufacturer is prohibited from making any major changes to the 'qualitative or

14

quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.'" (quoting 21 C.F.R. § 314.70(b)(2)(i))); *see also Drescher v. Bracco Diagnostics Inc.*, No. CV1900096TUCRMLCK, 2020 WL 699878, at *8 (D. Ariz. Jan. 31, 2020), *report and recommendation adopted*, No. CV1900096TUCRMLCK, 2020 WL 1466296 (D. Ariz. Mar. 26, 2020) ("Because it would constitute a major change under the regulations, Defendants were not able to alter their linear GBCAs to mirror a macrocyclic GBCA formulation without obtaining prior FDA approval."). As a result, Count Three is preempted by federal law.

In addition, Plaintiffs allege that Defendants "fail[ed] to ensure that the warnings contained in labeling Magnevist® adequately informed both patients and physicians of the significant risks of Gadolinium Toxicity, which existed even for patients with normal renal function." Compl. ¶ 109. Counts Four through Six are premised on this alleged negligent failure to include sufficient warnings.[5] *See id.* ¶¶ 128–29; 143–44 ("The Defendants utilized journal articles, advertising media, labeling and sales representatives to promote, encourage, and urge the use and purchase of Magnevist® . . . [and] represented that Magnevist® was . . ., as safe as other contrast agents and that the gadolinium component would be completely excreted through the body within a short period of time in consumers/patients with healthy renal function."); *id.* ¶ 154 ("Due to Defendants failure to report adverse events, Magnevist® labelling became false before the drug to the Plaintiff and thus failed to protect the public health by failing adequately to disclose the harms, risks and benefits Magnevist®").

---

[5] While Defendants argue that Count Two likewise "allege[s] a failure to provide proper warnings," Mot. at 18, the Court disagrees, at least in part. Rather than relying on Defendants' alleged failure to update drug labels warning of alleged risks to patients with normal renal function, Count Two claims that Defendants "had a duty of due care to determine the true risks and benefits" of its products, including to "conduct post-market testing and clinical trials to determine these risks," but did not "compl[y] with their duties of pharmacovigilance." *See* Compl. ¶¶ 115, 117.

15

To avoid preemption, therefore, Plaintiffs must demonstrate that Defendants could have included warnings that Magnevist posed "significant risks of Gadolinium Toxicity, which existed even for patients with normal renal function," Compl. ¶ 109, using the CBE regulation before Mrs. Langara received a dose of Magnevist in December 2008 and after the FDA approved Magnevist's label used at the time. *See Gibbons*, 919 F.3d at 708 ("[T]o constitute newly acquired information, as the term is defined in 21 C.F.R. § 314.3(b), [reports and studies] must have 'reveal[ed] risks of a different type or greater severity or frequency than previously included in submissions to the FDA.'" (quoting 21 C.F.R. § 314.3(b)))

Despite containing detailed allegations regarding research and FDA guidance on the potential hazards of gadolinium contained in GBCA's, however, Plaintiffs do not allege that "newly acquired information . . . reveal[ed] risks of a different type or greater severity or frequency than previously included in submissions to FDA" that Magnevist could cause gadolinium toxicity in patients with normal renal function. *See* 21 C.F.R. § 314.3(b). Defendants claim that the label for the dose of Magnevist that Mrs. Langara received in 2008 received FDA approval on September 4, 2007. Plaintiffs allege that several studies supported a causal "link between gadolinium based contrast dyes and NSF" in 2006, and "[i]n May 2007, the [FDA] issued a boxed warning in the product labeling of all Gadolinium based contrast agents, to point out the risk of NSF in patients with chronic kidney disease or injury." Compl. ¶¶ 32–33.

But Plaintiffs do not allege that additional studies indicated "risks of a different type or greater severity" between September 2007 and December 2008, let alone that similar warnings were issued for patients with normal renal function. 21 C.F.R. § 314.3(b). In fact, even when construed in the light most favorable to Plaintiffs, the Complaint suggests that while some studies allegedly indicated gadolinium retention occurred in patients with normal renal function,

16

there was allegedly a general consensus that GBCAs did not pose a significant medical risk to patients with normal renal function until around 2014. *See* Compl. ¶¶ 35, 36 ("After the discovery of NSF and the limitations imposed to GBCAs regarding individuals with kidney impairment, it was generally (although mistakenly) believed by the medical community that GBCA's were safe for individuals with normal renal function."). As a result, Plaintiffs fail to "plead a labeling deficiency that [Defendants] could have corrected using the CBE regulation." *Gibbons*, 919 F.3d at 708.

In addition, even if Plaintiffs did plead a labeling issue addressable through the CBE regulation, "there is clear evidence that the FDA would not have approved [Plaintiffs] change," *id.*, because the FDA explicitly rejected warnings of gadolinium retention for patients with normal renal function. In a class warning issued on December 19, 2017 after the FDA's "review and consultation with the Medical Imaging Drugs Advisory Committee," the FDA stated that "[g]adolinium retention has not been directly linked to adverse health effects in patients with normal kidney function, and we have concluded that the benefit of all approved GBCAs continues to outweigh any potential risks."[6] *See* https://www.fda.gov/drugs/drug-safety-and-availability/fda-drug-safety-communication-fda-warns-gadolinium-based-contrast-agents-gbcas-are-retained-body) (last visited December 19, 2024). As a result, even accepting as true the allegations in Plaintiffs' Complaint, Defendants could not amend Magnevist's label through a

---

[6] This FDA guidance is also cited in Plaintiffs' Complaint, see Compl. ¶ 39 (citing https://www.fda.gov/Drugs/DrugSafety/ucm589213.HTM), and the Court may take judicial notice of "public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute[.]" *Richardson v. New York City Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017); *see also Sabol v. Bayer Healthcare Pharm., Inc.*, 439 F. Supp. 3d 131, 148 (S.D.N.Y. 2020)("Of course, 'issues of fact, credibility, and the weight of the evidence' -- including how much weight should be accorded to publications and other scientific evidence -- are not properly considered on a motion to dismiss. Nevertheless, where scientific studies are cited and thus incorporated into the complaint, and where those studies simply do not support the allegations, the Court may find that the 'deficiencies ... go to the very heart of the plausibility standard under *Iqbal*.' That is precisely the case here." (quoting *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015)).

CBE regulation, nor would the FDA have approved such a change if they had attempted to do so.[7]

Accordingly, federal law likewise preempts Plaintiffs' claims premised on a failure to include adequate warning labels.

### C. Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive

---

[7] As Defendants note in their motion, "numerous federal courts have found similar failure-to-warn claims related to GBCAs preempted." Mot. at 7; *see also McGrath*, 393 F. Supp. 3d at 169 (On a motion to dismiss, finding federal law preempted Plaintiff's failure-to-warn claims premised on alleged failure to warn of gadolinium retention in patients with normal renal function who received Magnevist); *Sabol*, 439 F. Supp. 3d at 150 (On motion to dismiss, "Sabol does not sufficiently plead that as of 2015 Bayer had reasonable evidence of a causal association between Magnevist and a clinically significant adverse reaction in patients with normal kidney function. Thus, Sabol does not plead facts showing that Bayer had or should have had newly acquired information permitting it to unilaterally add her claimed warning under the CBE regulation. Consequently, Sabol's claims against Bayer are preempted[.]"); *Goodell v. Bayer Healthcare Pharms. Inc.*, No. 18-CV-10694-IT, 2019 WL 4771136, at *4 (D. Mass. Sept. 30, 2019) (On motion to dismiss, finding "the complaint does not cite any newly acquired information that arose after the FDA's approval of Magnevist's revised label in 2007 and before Plaintiff was administered Magnevist in 2010. Without factual allegations that Bayer had new information in this time period such that it could have or should have amended the label pursuant to the CBE regulation, the complaint is barred as preempted. Other district courts have reached this same conclusion." (citing *McGrath*, 393 F. Supp. 161; *and Klein v. Bayer Healthcare Pharms. Inc.*, No. 218CV01424APGEJY, 2019 WL 3945652, at *5 (D. Nev. Aug. 21, 2019) (On motion to dismiss, finding failure to warn claim preempted because "[t]he FDA has stated that '[g]adolinium retention has not been directly linked to adverse health effects in patients with normal kidney function.' Ingeborg does not plead facts showing that Bayer had or should have had newly acquired information permitting it to unilaterally add her desired warning under the CBE regulation. Consequently, Ingeborg has not stated a plausible claim for relief.")).

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Here, amendment of Plaintiffs' claims would be futile because Plaintiffs' claims accrued by 2009 at the latest, and thus their claims are now time-barred under the three-year statute of limitations for products liability and tort cases. *See* Conn. Gen. Stat. § 52–577 (three-year statute of limitations for tort claims); *Gnazzo*, 973 F.2d at 138 (quoting Conn. Gen. Stat. § 52–577a) (Products liability claim must be brought within three years from the date when the injury "is first sustained or discovered or in the exercise of reasonable care should have been discovered."). Even if Plaintiffs were to show that their claims accrued when Ms. Langara's doctor informed her that Magnevist likely caused her injuries in 2017, their claims would be time-barred because the savings provision of Section 52-592 does not apply to cases filed outside of Connecticut. *See* Conn. Gen. Stat. § 52-592(d); *Lippmann*, 628 A.2d at 626 ("The applicability of General Statutes § 52–592, construed according to its plain and ordinary meaning, hinges on the parties bringing

the action initially within a state or federal court in [Connecticut]."). Thus, amendment of all of Plaintiffs' claims would be futile because they are time-barred.

In addition, several of Plaintiffs' claims premised on an alleged design or manufacturing defect or failure to include adequate warning labels are preempted by federal law, and thus amendment of those claims would be futile for this reason as well. *See Bartlett*, 570 U.S. at 475 ("[S]tate-law design-defect claims that turn on the adequacy of a drug's warnings are pre-empted by federal law."); *Gibbons*, 919 F.3d at 708 ("[T]o state a claim for failure-to-warn that is not preempted by the FDCA, a plaintiff must plead a labeling deficiency that [Defendants] could have corrected using the CBE regulation." (citation and internal quotation marks omitted)).

Accordingly, because amendment of Plaintiffs' claims would be futile, the Court denies leave to amend.[8]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 20th day of December, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[8] Given the dismissal of all of Plaintiffs' claims with prejudice, for the reasons stated above, the Court need not and does not reach the issue of whether the Connecticut Product Liability Act otherwise bars their claims.